IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES E. WRIGHT, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>BNSF RAILWAY COMPANY, )<br>)<br>Defendant. ) | Cause No. 4:13-cv-00024-JED-FHM |

**PLAINTIFF'S MOTION IN LIMINE**

COMES NOW the Plaintiff, James E. Wright, by and through his attorneys, Bauer & Baebler, P.C. and The Gage Law Firm, in the above numbered and entitled cause, and, before commencement of the voir dire examination of the jury panel, respectfully moves that counsel for the defense and, through such counsel any and all defense witnesses be instructed by an appropriate order of this honorable Court to refrain from making any mention or interrogation directly or indirectly, and any manner whatsoever concerning the following matters. In this connection, Plaintiff would show the Court that the matters set out herein would be inadmissible for any purpose on proper and timely objection and that they have no bearing on the issues in this case or the right to the parties to this suit. Permitting interrogation of witnesses, comment to jurors or perspective jurors, or offers of evidence concerning these matters would prejudice the jury and sustaining objections to such questions, comments or offers would not cure such prejudice, but would rather reinforce the impact of such prejudicial matters on the jurors. The following matters would not be admissible for any purpose in this cause:

### RRB, Medicare and other Collateral Benefits

1. The Plaintiff has received, has been entitled to receive or will become entitled to receive benefits of any kind or character from a collateral source, including, but not limited to the following:

    a) Medicare;

    b) Railroad Retirement Board benefits.

<u>Evidence of disability and RRB benefits and Medicare benefits</u>. The Railroad Retirement Board (RRB) has determined that Mr. Wright is permanently and totally disabled from gainful employment. He, therefore, receives an annuity from the RRB each month and is provided insurance benefits through Medicare. The jury should hear no evidence regarding this collateral source.

Evidence of an FELA plaintiff's receipt of disability benefits is inadmissible in the Plaintiff's FELA action. <u>Eichel v. New York Cent. R.R. Co.</u>, 375 U.S. 253 (1963). In <u>Eichel</u>, the Supreme Court observed that the possible misuse of such evidence by the jury outweighed its value. <u>Id.</u> at 255. Thus, the relevancy of the evidence is not the key to the <u>Eichel</u> holding, but rather the balancing of unduly prejudicial evidence against its probative value. In this case, it is prejudicial error to allow Defendant to question Plaintiff about RRB retirement benefits, his application for RRB benefits, the age at which he can retire or any aspect of the existence of such benefits. As the Supreme Court in <u>Eichel</u> stated at 255-256:

> In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits under

the Railroad Retirement Act of 1937, 50 Stat. 309, as amended, 45 U.S.C. § 228b(a) 4, were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act. We have recently had occasion to be reminded that evidence of collateral benefits is readily subject to misuse by a jury. Tipton v. Socony Mobil Oil Co., Inc., 375 U.S. 34, 84 S.Ct. 1. It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. We hold therefore that the District Court properly excluded the evidence of disability payments. Accordingly, the judgment of the Court of Appeals is reversed and the case remanded for proceedings consistent with this opinion.

### Prior Unrelated Claims

2. The Plaintiff has had unrelated, prior or subsequent claims, suits or settlements, or the amounts thereof.

### Employment of Attorneys

3. The time or circumstances under which Plaintiff's attorney was employed.

### Income or Financial Means of Vicky Hayward

4. Plaintiff currently has a girlfriend, Vicky Hayward, who was deposed by Defendant. At her deposition, Ms. Hayward was questioned about her financial condition. The financial condition of Plaintiff's girlfriend is irrelevant to any issue in this lawsuit since this suit is only for injuries and damages of Plaintiff. Vicky Hayward, Mr. Wright's current girlfriend, is not a party in this case and therefore has no claim for injuries. Thus, any evidence of Ms. Hayward's financial status is irrelevant and prejudicial to Plaintiff.

### ADA

5. That Plaintiff has a right under the American's with Disabilities Act to work for Defendant with reasonable accommodations. There has been no showing or testimony that any such accommodations have been offered to Plaintiff so that he could now perform the duties of a carman for the Defendant. In addition, there has not been any determination made on Plaintiff's

case that that the ADA applies to him. Such evidence is irrelevant to the issues in this case and is prejudicial to Plaintiff.

## Motivations of Litigation

6. That there be no testimony that Plaintiffs in litigation recover more fully or are more motivated to find work after their lawsuits are settled. There has been no testimony that such is the case with the Plaintiff.

## Assumption of Risk

7. That Plaintiff assumed the risk of the dangers of his job. Assumption of risk is not a defense in FELA cases. 45 U.S.C. Sec. 54; Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994); Norfolk & Western R. Co. v. Ayers, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003). Defendant has a non-delegable duty to provide Plaintiff with a reasonably safe work place. Ruddy v. New York Cent. R. Co., 224 F. 2d. 96 (1955) cert. denied 76 S. Ct. 137, 350 U.S. 884, 100 L. Ed. 779; Shenker v. B. & O. R. Co., 374 U.S. 1, 83 S. Ct. 1667, 10 L. Ed. 2d. 709 (1963). In this case, Defendant questioned Plaintiff during his first deposition about Defendant's empowerment rule. Defendant's empowerment rule is a rule which grants to an employee the ability to refuse to perform a job task if that employee believes that the performance of that job task is too dangerous to undertake. Plaintiff believes that Defendant will attempt to use its empowerment rule as the basis for negligence on the part of Plaintiff for performing a job task which caused him injury. The use of Defendant's empowerment rule in this manner in this lawsuit is nothing more than an effort by Defendant to hold Plaintiff responsible for performing his job duties, which is assumption of the risk. Congress specifically eliminated assumption of risk as a defense in FELA cases, and Defendant should not now be

4

allowed to place its responsibility for providing a safe work place on its employee in an attempt to avoid liability in an FELA case, or reduce Plaintiff's damages.

### Any Lack of Cumulative Trauma Injuries.

8. Any evidence or argument by the railroad that it has a lack of cumulative trauma injuries for claims made with the Defendant for carmen unless Plaintiff will be entitled to show other claims for repetitive trauma injuries to other carmen employed by Defendant. Plaintiff was prohibited from obtaining discovery of complaints and reports of cumulative trauma injuries suffered by Defendant's carmen, and thus Defendant should not be allowed to submit evidence which was denied Plaintiff in discovery.

### Discipline of Plaintiff by Defendant

9. No evidence or mention should be made that Defendant fired Plaintiff Wright after this incident for dishonesty. Pursuant to the Collective Bargaining Agreement ("CBA") between Defendant and Plaintiff's union, Defendant charged Plaintiff with a violation of its rules concerning dishonesty, held a formal investigation presided over by Defendant and then Defendant terminated Plaintiff's employment as a result of the evidence Defendant presented at the formal investigation. Plaintiff was not allowed representation by an attorney and no discovery was permitted prior to the hearing. After his termination, Plaintiff's union appealed the discipline to the Public Law Board in accordance with the provisions of the CBA. The Public Law Board acts as an appeals tribunal and again is enforcing the provisions of the CBA based upon the record the Defendant created at the formal investigation. The evidence establishes that Mr. Wright is totally and permanently disabled from his job as a result of this incident. Mr. Wright was fired by the Defendant railroad. Plaintiff anticipates that Defendant will attempt to "cut-off" its responsibility for his lost ability to work by firing Mr. Wright by claiming the he

was terminated from employment for reasons other than his injury and therefore not entitled to recover past and future lost wages and benefits. For the reasons stated below, Defendant's discipline of Plaintiff should have no affect on Plaintiff's claims for past and future lost wages and benefits. Once the Plaintiff was injured, he underwent surgery on his shoulder and was found to be totally and permanently disabled as a result of the injury to his shoulder. In addition, Plaintiff suffered cumulative trauma injuries to his spine, which also disable him from doing the job of a carman. Thus, once Mr. Wright's shoulder was injured on January 20, 2010 he was no longer able to perform railroad work in his craft due to an injury caused by Defendant, and his lost future income was cemented and could not be undone.

Defendant will likely attempt to use this termination to argue that Plaintiffs cannot pursue lost railroad wages and to argue that Plaintiff has already been found to be dishonest regarding the injuries claimed in this lawsuit. This is why this cannot be allowed into evidence. Defendant will also likely try to use this termination to shoehorn in the illegal and inadmissible evidence of Plaintiff's receipt of RRB benefits and prejudice the jury against Mr. Wright by interjecting his termination. Knowing it will be impossible to discuss Plaintiff's termination without swimming into the poisonous waters of Plaintiff's RRB application process, the Defendant will argue vehemently that it should be allowed to interject this prejudice into the process. The evidence from Mr. Wright's treating surgeon establishes that Mr. Wright is disabled from railroad employment as a result of the injury to his shoulder. That disability is permanent. Defendant cannot be allowed to use the termination, incident to his injuries and need to mitigate his damages, to reduce its responsibility for the Plaintiffs' damages.

Under the FELA, the Defendant is liable for all damages caused in whole or in part, by its wrongful conduct. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 508 (1957).

According to several federal cases interpreting such a situation, the trial judge must exclude the evidence of the dismissal. Under the Railway Labor Act, the railroad is the prosecutor, judge, and jury regarding investigations and deciding to discharges its employees. Accordingly, giving the railroad the benefit of this dismissal to reduce its damages exposure gives it the unilateral right to affect the value of a worker's case without due process of law.

The decision of the United States Court of Appeals for the Seventh Circuit in Kulavic v. Chicago & Illinois Midland Railway Co., 1 F.3d 507 (7th Cir. 1993), specifically addresses this situation. In Kulavic, the court carefully considered the interrelation between the Railway Labor Act (RLA), which addresses employee discipline, and the FELA. In doing so, the court considered the purpose of the RLA, and the procedural remedy it affords, versus the rights guaranteed injured railway workers under the FELA. First, the court determined, consistent with the holding of the United States Supreme Court in Atchison, Topeka and Sante Fe Ry. v. Buell, 480 U.S. 557, 566-567 (1987), that the two acts have different purposes and that "[a]s far as a worker's right to damages under the FELA is concerned, Congress' enactment of the RLA has had no effect." Id. at 513. The Circuit Court then determined that the procedures followed in the course of an RLA disciplinary investigation "do not provide sufficient guarantees for reliable fact finding under the FELA". Id. at 517. The end result of this extensive discussion was the court's holding that "[t]he arbitral award by the PLB [Public Law Board] should not have been given preclusive effect in Mr. Kulavic's subsequent FELA action." Id. at 520. See also Pothul v. Consolidated Rail Corp., 94 F.Supp.2d 269, 272 (N.D.N.Y 2000).

The carriers are aware that their remedy for lost wages, which relate exclusively to the discharge, are controlled by the Railway Labor Act. 45 U.S.C. §153. (Kulavic similarly admitted that his discharge could not be re-litigated in his FELA trial. Id. 510). Nevertheless, the railroad

7

may try to interject the discharge into the trial to prejudice the jury and keep the verdict low. This evidence must be excluded as irrelevant to the issues to be decided in this case.

The jury should only hear evidence about the damages that the worker suffered as a result of the injuries sustained. The fact that a worker, such as Mr. Wright, is disciplined by the railroad following the incident and discharged, does not limit the worker's damages directly related to the on-the-job incident. In other words, if the employee is unable to work for reasons unrelated to disciplinary action, and directly related to physical injuries sustained in the on-duty injury, he is still entitled to the full amount of damages caused in whole or in part by that injury. The Supreme Court explained the rationale for this position in Atchison, Topeka and Sante Fe Ry. v. Buell, 480 U.S. 557 (1987):

> "[I]t is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion . . . 'the Railway Labor Act . . . has no application to a claim for damages to the employee resulting from the negligence of an employer railroad.'"

Id. at 565 (cites omitted).

The case that is probably most like the case presently before this Court is Torres v. Union Pacific Railroad Co., 2006 WL 3359209 (E.D. Cal.). The issue before the Torres court was, "whether plaintiff could recover under the [FELA]…future lost wages that accrued after his discharge from the defendant railroad company." Id. at *1. The defendant railroad fired the plaintiff after his injury, "for dishonesty, having been found to have exaggerated the extent," of the injuries he suffered and argued that the Railway Labor Act thus barred his lost wage claims. Plaintiff disagreed, and the court ruled for the plaintiff. "Because Plaintiff brings a claim

pursuant to FELA to recover future lost wages and benefits related to his personal injuries rather than his termination, that claim is not barred based on the previous disciplinary hearing conducted by [the railroad] pursuant to the RLA." Id. at *2 (quoting Pothul v. Consolidated Rail Corp., 94 F.Supp.2d 269, 272 (N.D.N.Y 2000)) (emphasis in original). In other words, plaintiff was seeking "future lost wages and benefits he would have earned with the defendant had he not been injured and become permanently disabled," and was not seeking to relitigate his termination in the RLA proceedings. Like the court in Pothul, supra, and Kulavic, supra, the court in Torres held that "the RLA proceedings do not bar plaintiff's claim for future lost wages accruing subsequent to his termination." Id. at *3. The Torres court went a step further, however, and expressly held that "the fact of plaintiff's termination, and the reasons therefore, are inadmissible in this action. Id. (citing Fed. R. Civ. P. 403). "Such evidence is excludable as unduly prejudicial because plaintiff was discharged for conduct involving the very injuries he seeks recovery for in this action." Id.

This Court should exclude the evidence of Plaintiff Wright's dismissal because his future lost wages were caused by the injuries he received as a result of the Defendant railroad's negligence which is the subject of the lawsuit. Plaintiff's injuries and damages were fixed and accruing once he was injured, which was prior to his termination. The Defendant railroad is not allowed to escape its liability for disabling its employees by firing them after they are injured and disabled. Allowing such evidence is not only prejudicial to Plaintiff in this case, but doing so would encourage the Defendant railroad, and other railroads, to employ these tactics in future cases. If the railroad succeeds in proving dismissal, it is one step away from preventing a Plaintiff from proving lost railroad wages and benefits as an item of damages. Denying a worker the opportunity to prove his lost railroad wages and benefits would unfairly prevent the worker

from collecting damages for lost wages as is allowed by the Federal Employers' Liability Act. 45 U.S.C. §51. The Act provides that the railroad **shall** be liable in damages to any person suffering injury while he is employed by the railroad if the railroad's failure to provide a safe place to work, or its violation of a Safety Appliance Act, caused the employee's injuries. See, e.g., Nashville, C. & St. L. Ry. v. Henry, 158 Ky. 88, 164 S.W. 310 (1914).

In fact, the Georgia Court of Appeals considered this issue and noted, "defendant's premise that the fact of discharge is relevant to lessen plaintiff's damages is faulty." Central of Georgia Railroad Co. v. Carter, 212 Ga. App. 528, 530, 442 S.E.2d 269, 272 (1994). Thus, it would be improper for Defendant to be permitted to argue that it is allowed to cut-off its liability for Mr. Wright's lost income by terminating him. This Court should not permit Defendant to prejudice the jury by introducing evidence about Mr. Wright's termination.

In the Kulavic case, the Seventh Circuit carefully analyzed the purposes of both the RLA and the FELA as well as the relationship, if any, between these two Acts. The Seventh Circuit engaged in the following discussion concerning the FELA and the RLA at p. 512-513:

> Relying extensively on Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), Mr. Kulavic argues that the award by the PLB should not be given preclusive effect over federal statutory rights embodied in the FELA.
>
> . . .
>
> Congress originally enacted the FELA in 1906 to create a federal remedy for railroad employees injured on the job by the negligence of their employers or their coworkers. Atchison, T. & S.F. Ry. v. Buell, 480 U.S. 557, 561, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 (1987); Lancaster v. Norfolk & Western Ry., 773 F.2d 807, 812 (7th Cir.1985), cert. denied, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987). Independent of the railroad's obligations under its CBA, the FELA provides railroad workers not only with substantive protection against negligent conduct by the railroad, but also affords an injured worker a remedy suited to his needs, untrammeled by many traditional defenses against tort liability. Buell, 480 U.S. at 565, 107 S.Ct. at 1415. This statute thus serves to

provide an injured worker with an expeditious recovery and also gives a railroad the incentive to maintain vigilance over the safety of its workers and, concomitantly, the conditions in which they must work. An injured railroad employee can recover under the FELA as long as the employer's negligence "played any part, even the slightest, in producing the injury ... for which damages are sought." Rogers v. Missouri Pacific R.R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). Moreover, the FELA has also been interpreted to reach at least some intentional torts. See Lancaster, 773 F.2d at 812. The FELA is, therefore, a broad remedial statute to be construed liberally in order to effectuate its purpose. Buell, 480 U.S. at 562, 107 S.Ct. at 1414.

The RLA was established to achieve an altogether different goal. Enacted in 1926, the RLA provides an extensive administrative framework for resolving labor disputes in the railroad industry. Id. Under the RLA, minor disputes--those involving "grievances that arise daily between employees and carriers regarding rates of pay, rules, and working conditions," i.e., disputes under the operative CBA--are to be resolved out of court. See 45 U.S.C. Sec. 153 First (i). In this manner, Congress promoted stability in the railroad industry by creating a mandatory alternative to judicial resolution of railroad-employee disputes arising out of the interpretation of CBAs. Union Pacific R.R. v. Sheehan, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

Pursuant to the RLA, a minor dispute must first be handled through the railroad's usual internal dispute resolution procedures. This usually consists of an investigation held on the railroad's premises. If the dispute remains unsettled, a party may submit it to the National Railroad Adjustment Board (NRAB) or to a PLB (which is merely a smaller version of the NRAB and is frequently stipulated to by the parties in order to hasten dispute resolution, see 45 U.S.C. Sec. 153 Second). Buell, 480 U.S. at 562-63, 107 S.Ct. at 1414. A PLB is composed of a labor member, a railroad member, and a neutral member and is essentially an arbitral tribunal that reviews the outcome of a railroad's investigative hearing to ascertain whether the result is consonant with the terms of the CBA between the railroad and its union employees. See Elmore v. Chicago & I.M. Ry., 782 F.2d 94, 95 (7th Cir.1986); FRANK ELKOURI & EDNA A. ELKOURI, HOW ARBITRATION WORKS 304 (4th ed. 1985). A PLB award may be appealed in federal court, but the scope of judicial review is "among the narrowest known to the law." Sheehan, 439 U.S. at 91, 99 S.Ct. at 401; see also American Train Dispatchers Ass'n v. Norfolk & Western Ry., 937 F.2d 365, 366 (7th Cir.1991). "Judicial review of Board orders is limited to three specific grounds: (1) failure of the Board to comply with the requirements of the Railway Labor Act; (2) failure

11

of the Board to confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." American Train Dispatchers, 937 F.2d at 366 (citing 45 U.S.C. Sec. 153 First (q)).

Although the RLA was enacted many years after the FELA had been established, the text makes no mention of the FELA, Buell, 480 U.S. at 562, 107 S.Ct. at 1414, much less mention of any preclusive effect a PLB award might have on issues raised in a FELA claim. Moreover, there is no indication in the RLA that the FELA rights were in any way diluted by the enactment of the RLA. The RLA merely states that awards of the PLB "shall be final and binding upon both parties to the dispute." 45 U.S.C. Sec. 153 First (m) and 153 Second. In discussing whether a worker's action for emotional injury should be considered a FELA claim or should fall under the purview of the RLA, the Supreme Court has noted that "absent an intolerable conflict between the two statutes, we are unwilling to read the RLA as repealing any part of the FELA.... As far as a worker's right to damages under the FELA is concerned, Congress' enactment of the RLA has had no effect." Buell, 480 U.S. at 566-67, 107 S.Ct. at 1416; see also Capraro v. United Parcel Serv. Co., 993 F.2d 328 (3d Cir.1993) (noting that the RLA does not preempt claims that may also be brought under the FELA).

We must determine whether the court correctly gave preclusive effect to an issue purportedly resolved by the PLB.

In the case of <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court also emphasized a distinction between asserting contractual rights under a CBA and asserting independent, individually-based statutory rights accorded by Congress. <u>Id</u>. at 49-50, 94 S.Ct. at 1020. Thus, the Court based its rejection of preclusive effect, in large part, on its belief that Congress intended the FELA statute to be judicially enforceable and that arbitration does not provide an adequate substitute for judicial proceedings in adjudicating claims under that statute.

The Supreme Court further emphasized that arbitration has a well-defined role in the "system of industrial self-government." <u>Id</u>., 415 U.S. at 53, 94 S.Ct. at 1022 (footnote omitted). The Supreme Court went on to discuss the role of the PLB/arbitrator at p. 415 U.S. 53:

As the proctor of the bargain, the arbitrator's task is to effectuate the intent of the parties. His source of authority is the collective-bargaining agreement, and he must interpret and apply that agreement in accordance with the "industrial common law of the shop" and the various needs and desires of the parties.

. . .

… the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land.... Parties usually choose an arbitrator because they trust his knowledge and judgment concerning the demands and norms of industrial relations. On the other hand, the resolution of statutory or constitutional issues is a primary responsibility of courts....    Id. at 57, 94 S.Ct. at 1024.

Justice Powell also stated that:

the factfinding process in arbitration usually is not equivalent to judicial factfinding. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable. Id. at 57-58.

In Kulavic, the Seventh Circuit also noted, at page 515:

Under the RLA, the PLB reviews a minor dispute only after the claim is first presented to the railroad pursuant to its usual reviewing procedures. 45 U.S.C. Sec. 153 First (i). The RLA does not govern the procedures a railroad uses in its investigative hearing. Edwards v. St. Louis-San Francisco R.R., 361 F.2d 946, 953 (7th Cir.1966). Instead, at this stage of a grievance claim, "the dispute is between private parties [the employee and the railroad] and the applicable procedure for settling the dispute is governed by the contract between them." Id. at 954. The rights available to an employee, therefore, are governed by the CBA and may vary from agreement to agreement; CBAs are not required to contain a standard set of guarantees for investigative hearings. For example, the employee does not necessarily have the right to be represented by an attorney during the proceedings. Id. In Edwards, this court stated that "[b]asically, all that is required of the initial conference on company property is that 'men of good faith must in good faith get together in a sincere effort to resolve their differences.' "

The Seventh Circuit also noted, at p. 517:

This PLB, therefore, did not look beyond the record established by railroad management in the investigative hearing and this fact must give us pause for concern.

13

>Because the PLB here functioned as an appellate tribunal, it was limited to reviewing the record created in the railroad-controlled investigative hearing. Furthermore, C & IM does not dispute that the factfinding process utilized at the hearing was not equivalent to evidentiary procedures used in judicial factfinding. For these reasons, we do not believe that the PLB's review could protect adequately the statutory rights set forth in the FELA.
>
>…
>
>C & IM has the burden of establishing that res judicata or collateral estoppel ought to bar post-termination economic damages in the FELA action. In this case, that burden has not been met. C & IM has not demonstrated that these procedures were sufficiently protective of Mr. Kulavic's federal statutory right to recover under the FELA.

And at p. 518, the Seventh Circuit found:

>Furthermore, the PLB's mandate is to interpret the CBA, not to enforce statutes.
>
>…
>
>Relief under the RLA for unjust dismissal would have been limited to reinstatement and back pay, whereas in the district court the employee would have all of the usual avenues of recovery available. "Hence, the remedies available in the arbitral forum, though effective for the resolution of 'minor disputes' under the collective bargaining agreement, are patently inadequate as a means of resolving appellant's constitutional claims under Sec. 1983." Id. Acknowledging that the record did not indicate that the employee's constitutional claims had been considered or determined by the PLB, the court concluded that the arbitral decision by the PLB was not res judicata with respect to the district court action. Id.

The Seventh Circuit also analyzed the case of <u>Coppinger v. Metro-North Commuter R.R.</u>, 861 F.2d 33 (2d Cir.1988), noting at p. 519:

>the issue in front of the arbitrators--whether the employees were considered rate bureau employees under the Staggers Act--was closer to the arbitrators' realm of expertise than was the Fourth Amendment claim in Coppinger.

The Seventh Circuit went on to hold, at p. 519:

>…We have held already that the factfinding procedures used in Mr. Kulavic's case are inadequate to convince us that facts allegedly determined in the arbitration should be given preclusive effect in a FELA action. Focusing on the inadequacy

14

> of the arbitral procedures, when juxtaposed against the important statutory rights embodied in the FELA, we believe that the situations in Coppinger and this case are analogous.
>
> . . .
>
> As we have previously noted, there is no indication that Congress intended to subordinate the rights created by FELA to the strictures of the RLA. Moreover, the task of the PLB was limited to application of the CBA. Indeed, it is not at all clear that the issue determined by the PLB was even the same issue as the damages issue presented to the district court in the FELA action.

The Seventh Circuit further held at p. 520:

> The arbitral award by the PLB should not have been given preclusive effect in Mr. Kulavic's subsequent FELA action. In his prayer for relief, Mr. Kulavic requested a new trial only on the issue of damages.
>
> …
>
> For the foregoing reasons, we reverse the ruling of the district court regarding the preclusive effect of the PLB award, remand for a new trial on damages in accordance with this opinion, and dismiss C & IM's claims on cross-appeal. Mr. Kulavic may recover his costs in this court.

The U. S. District Court for the Eastern District of California was faced with a nearly identical case as that in the case at bar in Torres v. Union Pacific Railroad Company, NO. CIV. S-04-2670 FCD GGH. In the Torres case the Defendant railroad discharged the FELA Plaintiff for dishonesty, just as the Defendant has done here. In Torres, the Court analyzed the relevant case law and concluded that Plaintiff was seeking recovery for his personal injuries sustained in the accident not any injury attributable to his subsequent termination. The District Court went on to hold that the RLA proceedings do not bar plaintiff's claim for future lost wages accruing subsequent to his termination, that the fact of plaintiff's termination, and the reasons therefor, are inadmissible in the FELA case, citing Rule 403 of the Federal Rules of Evidence, and further found such evidence to be excludable as unduly prejudicial as plaintiff was discharged for

15

conduct involving the very injuries he seeks recovery for in the FELA action. A copy of the Memorandum and Order dated 11/20/06 in the Torres case is attached hereto as Exhibit 1.

## CONCLUSION

For the reasons stated above, Plaintiff submits that the Court should grant Plaintiff's Motion in Limine, including all portions thereof, and issue an appropriate order accordingly.

WHEREFORE, Plaintiff respectfully prays that this Motion be granted and an appropriate order of this Court be entered pursuant thereto.

Respectfully submitted,

THE GAGE LAW FIRM

  // Edwin Gage //
Edwin Gage, OBA #3197
124 South 4th Street
Muskogee, OK 74401
918-682-0555
914-687-4731 (fax)
Elgage1940@sbcglobal.net

AND

BAUER & BAEBLER, P.C.

  // Joseph L. Bauer, Jr. //
Joseph L. Bauer, Jr., MO Bar No. 24761
Bauer & Baebler, P.C.
1716 South Broadway
St. Louis, MO 63104
Telephone (314)-241-7700
Facsimile (314) 241-0003
jbauer@bauer-baebler.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

Comes now the undersigned and hereby certifies that the preceding document was submitted via the Court's electronic filing system this 21st day of December, 2015 to all counsel of record:

George E. Gibbs, Esq.
George Mullican, Esq.
Jamie A. Rogers, Esq.
Gibbs Armstrong Borochoff
　　Mullican & Hart, P.C.
601 S. Boulder Ave., Ste. 500
Tulsa, OK 74119
*Attorneys for Defendant*

　　　　　　　　　　　　　　　　　　　　　　　　　　  // Joseph L. Bauer, Jr. //