IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

JAMES E. WRIGHT, )
)
           Plaintiff, )
)
Vs. )
)    Cause No. 4:13-cv-00024-JED-FHM
BNSF RAILWAY COMPANY, )
)
           Defendant. )

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT
BNSF RAILWAY COMPANY'S *DAUBERT* MOTION
REGARDING STEPHEN J. MORRISSEY, PhD.
AND BRIEF IN SUPPORT**

COMES NOW Plaintiff, James E. Wright, by and through his undersigned counsel, and hereby requests the court to deny Defendant BNSF Railway Company's *Daubert* Motion Regarding Dr. Stephen Morrissey (Doc. #128). For the reasons set forth below, Defendant's position is without merit and must be denied in its entirety.

INTRODUCTION

On January 11, 2013 plaintiff filed suit against defendant under the Federal Employers Liability Act (FELA), 45 U.S.C.A. § 51 *et seq.* seeking compensation for disabling injuries to his left shoulder sustained as a result of a traumatic event which occurred on January 20, 2010 and to his cervical spine, lumbar spine sustained as a result of cumulative and repetitive trauma plaintiff experienced while working for the railroad throughout his lengthy railroad career. Plaintiff s most prominent injuries are to his cervical spine, lumbar spine and left shoulder. Plaintiff underwent left shoulder surgery on February 22, 2010, and has undergone physical therapy for his neck and low back as well as injections in these areas.

Relevant to the issue presented herein, plaintiff expects to offer the testimony of Plaintiff's manifestly qualified liability expert, Dr. Stephen Morrissey, on several issues, including general causation and Defendant's historical knowledge of and failure to address known biomechanical and ergonomic risk factors for the development of musculoskeletal disorders such as those sustained by Plaintiff specifically related to inadequacies in Defendant's work environment and the employment tasks Plaintiff was required performed as a carman employee for defendant. Dr. Morrissey's opinions, and the underlying foundation for his opinions, are detailed in his March 28, 2015 report consisting of 34 pages *(Exhibit 1)*, and in his October 13, 2015 deposition testimony. *(Exhibit 2)*

It is uncontested that Dr. Morrissey is manifestly qualified to render expert opinions in this case. Furthermore, and as discussed below, Dr. Morrissey's opinions pertaining to the known biomechanical, biomedical and ergonomic risk factors Plaintiff was subjected to in performing his carman duties throughout his lengthy railroad career, as well as Defendant's failure to take adequate steps to minimize his persistent exposures to recognized risk factors for the development of musculoskeletal injuries, are reliable and will assist the jury in understanding Defendant's obligations to provide its employees with a reasonably safe place to work; deciding whether or not Defendant breached its duty owed to Plaintiff; and cumulative trauma of the types experienced by Plaintiff generally causing the injuries he has sustained.

## FACTUAL BACKGROUND

Dr. Morrissey's curriculum vitae and report set forth his extensive education, training, background and experience, specifically including his extensive experience with railroad industry matters, were provided to Defendant and are provided with this Brief in

2

Response to Defendant's motion. ( *Exhibits 1, 3*) Dr. Morrissey has a bachelor's degree in Electrical Engineering; a master's degree in Psychology; and a Ph.D. in Industrial Engineering. *(Ex. 1, 3)* Dr. Morrissey is a Certified Professional Ergonomist who has extensive teaching experience and has been employed full time since 1991 as an ergonomic consultant for the State of Oregon, Occupational Safety and Health Administration. *(Ex.2, p. 7:7-21; Ex. 3)* Throughout his distinguished professional career, Dr. Morrissey has frequently consulted in litigation and non-litigation related matters and has performed extensive research and countless evaluations in the areas of workplace safety, health, ergonomics, and industrial engineering. (*Exhibit 1*) Defendant's attorney is aware that Dr. Morrissey has been asked to be an expert consultant in over 100 cases involving railroads. *(Ex. 2, p. 118:12-25)* He has been retained as an expert in over 200 cases, many involving railroads. *(Ex. 1, 3)* Dr. Morrissey has performed posture analyses, such as Plaintiff experienced in his duties as a carman, in many places in many different conditions and many different environments. *(Ex. 2, p. 118:12-25; Ex. 3)* Dr. Morrissey has several publications and presentations to his credit pertaining to engineering and safety issues involving topics such as biomechanical engineering, human factors, product safety and accident reconstruction. *(Ex. 1, 3)* Defendant does not challenge the qualifications of Dr. Morrissey, or the relevance of his opinions assuming they are found to be reliable. It is nonetheless important to highlight Dr. Morrissey's impressive credentials, background, education and extensive experience with railroad industry matters as said factors directly impact the underlying reliability of his opinions.

Dr. Morrissey's opinions, and the voluminous materials reviewed by Dr. Morrissey in this case which form the basis of his opinions are set forth in great detail in his March 28,

2015 report and were further explored during his October 13, 2015 deposition. *(Ex. 1, 2)* Plaintiff respectfully submits that all this Court has to do is look at Dr. Morrissey's detailed 34 page report *(Ex. 1)* which thoroughly documents the materials he reviewed, his personal professional experience, his substantial body of knowledge regarding the freight railroad industry, and the methodology he employed and applied to the facts of this case in deriving at his opinions. As will be discussed below, any perceived limitations in the foundational evidence underlying Dr. Morrissey's opinions go to the weight, but not the ultimate admissibility of his opinions. Defendant's motion must be denied.

## ARGUMENT

I.   **Evidence And Opinions To Be Offered Through Dr. Stephen Morrissey Are Relevant, Reliable, And Admissible Pursuant To** *Daubert* **and Federal Rules Of Evidence 702 And 703 To Prove Essential Elements Of Plaintiff's FELA Negligence Claim**

*1.*   **Daubert and the substantive standards of causation and foreseeability of harm under the FELA**

Fed. R. Evid. 702 provides, in part:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by **knowledge, skill, experience, training, or education,** may testify thereto in the form of an opinion or otherwise..." (emphasis added)

The application of Rule 702 is governed by *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993). The Tenth Circuit has noted that the test of reliability is not intended to be a mechanical application of the factors set forth in *Daubert;* rather the gatekeeper inquiry under Rule 702 is ultimately a flexible determination. See *Goebel v. Denver and Rio Grande W R.R. Co.,* 215 F.3d 1083, 1088 (10th Cir. 2000). *Daubert* discussed four non-exclusive and non-

exhaustive factors related to the whether the testimony is reliable. These include l) whether [the expert's theory] can be (and has been) tested; 2) whether the theory or technique has been subjected to peer review and publication: 3) the known or potential rate of error; and 4) general acceptance among the relevant scientific community. *Daubert,* 509 U.S. at 593-94.

In *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137 (1999), the Court held *Daubert* is applicable to the testimony of experts who are not scientists, such as engineers, who testify on the basis of "technical" or "other specialized" knowledge. In such cases:

> a trial court *may* consider one of more of the specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But as the Court stated in *Daubert,* the test of reliability is "flexible," and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case.

*Kumho Tire,* 526 U.S. at 141 (italics in Court's opinion). The Court explained that:

> *Daubert* makes clear that the factors it mentions do not constitute a "definitive checklist or test." *Id.,* at 593, 113 S.Ct. 2786. And *Daubert* adds that the gatekeeping inquiry must be " 'tied to the facts' of a particular "case." *Id.,* at 591, 113 S.Ct. 2786 . . . We agree with the Solicitor General that "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." . . The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert,* nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.

*Kumho Tire,* 536 U.S. at 150.

The court's gatekeeping role should focus on the methodology employed by the expert in reaching the conclusions and not on the precise conclusions themselves. *See Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1233 (10th Cir. 2004). It is not the trial court's role to decide whether an expert's opinion is correct. *Daubert* itself referred to the expert's "reasoning or

methodology." *Daubert,* 509 U.S. at 592-93. "The evidentiary requirement of reliability is lower than the merits standard of correctness." Rule 702, Committee Note 2000. In *Daubert,* 509 U.S. at 596, the Court recognized that:

> Determinations on admissibility should not supplant the adversarial process; "shaky" expert testimony may be admissible, assailable by its opponents on cross-examination.

Whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue" under Rule 702 is a question that "goes primarily to relevance." *Daubert,* 509 U.S. at 591. Relevance in turn depends on the substantive law applicable to the facts of the case. The substantive law here is the FELA.

The FELA was enacted with the purpose of providing a remedy for railroad workers "for injury or death resulting **in whole or in part** from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51 (emphasis added). The FELA is a broad remedial statute that must be construed liberally to effectuate its humanitarian purposes. *Uric v. Thompson,* 337 U.S. 163, 180-81 (1949).

The FELA has a relaxed standard of causation based on the phrase "resulting in whole or in part" in the text of 45 U.S.C. § 51. *CSX Trans., Inc. v. McBride,* 131 S.Ct. 2630 (2011); *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 506-507 (1957); *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 543 (1994) ("a relaxed standard of causation applies under FELA"). The plaintiff's burden in a FELA action is therefore "significantly lighter" than in an "ordinary negligence case." *Lisek v. Norfolk & Western Railway Co.,* 30 F.3d 823, 831-32 (7th Cir. 1994).

Reasonable foreseeability of harm is an element of the negligence claim under the FELA. Importantly, however, an extremely expansive view of reasonable foreseeability has been recognized in FELA jurisprudence. In *Gallick v. Baltimore & Ohio Railroad Company,* 372 U.S. 108 (1963), the Court stated:

> It is widely held that **for a defendant to be liable** for consequential damages **he need not foresee the particular consequences of his negligent acts:** assuming the existence of a threshold tort against the person, then **whatever damages flow from it are recoverable** ...And we have no doubt that under a statute where the tortfeasor is liable for death or injuries in producing [sic] which his "negligence played any part, even the slightest" ... such a tortfeasor must compensate his victim for even improbable or unexpectedly severe consequences of his wrongful act. [Citations omitted]

*Gallick,* 372 U.S. at 120-21 (emphasis added). If the record contains evidence from which the court could draw the conclusion that the employer's negligence played any part in the plaintiff's injury then it must send the case to the jury, even if the evidence would also allow the jury to find for the employer. *Gallick,* 372 U.S. at 116-17. An employee raises a triable issue of foreseeability by producing "probative facts from which [a] jury could find that [the employer] was or should have been aware of conditions which created a likelihood that [the employee], in performing the duties required of him, would suffer just such an injury as he did." *Rogers,* 352 U.S. at 503; *Urie v. Thompson,* 337 U.S. 163, 178 (1949) (an employer's "knowledge, actual or constructive, of the alleged inadequacies of the [employer's] equipment [is] a jury question).

**2.      Dr. Morrissey is manifestly qualified to render opinions regarding the railroad's failure to provide plaintiff with a reasonably safe place to work and general causation**

In its motion, defendant is **not** challenging Dr. Morrissey's impressive credentials, education, training and experience in the fields of ergonomics and human factors engineering,

occupational health and safety, and industrial engineering. Pursuant to the requirements of Rule 702 Federal Rules of Evidence, it is **undisputed** that Dr. Morrissey is a manifestly qualified expert having specialized training, education and experience in a field that undoubtedly will assist the jury in understanding the issues concerning the railroad's duties and obligations to provide plaintiff with a reasonably safe place to work, whether defendant breached its obligations owed to plaintiff, and general causation opinions as set forth in his March 28, 2015 report and in his deposition testimony of October 13, 2015.

3.      **Dr. Morrissey has more than a sufficient factual basis to support the validity of his methodology supporting his opinions that defendant failed to provide plaintiff with a reasonably safe place to work under the FELA and that defendant's breach was a general cause of the types of traumatic injury to his shoulder and cumulative trauma musculoskeletal injuries plaintiff has sustained to his spine**

Dr. Morrissey possesses abundant knowledge and information, years of experience researching and analyzing ergonomic and biomechanical risk factors present in the freight railroad industry and other related industries, as well as ample case specific information which establish a solid foundation for the opinions rendered in this case. *[Ex. 1,2,3]*

The United States Supreme Court has made it clear that the reasonableness of the *Daubert* factors in assessing reliability depends upon the nature of the issue, the witness's particular expertise, and the subject of the expert's testimony. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150 (1999). As an expert, it is clearly acceptable for Dr. Morrissey to rely on all of the materials that he did in reaching his opinions in this case. Not only is it permissible for Dr. Morrissey to rely on his extensive firsthand knowledge and experience, Dr.

Morrissey may rely upon both data collected by others and tests performed by others in reaching his conclusions. *See Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 588-589 (7th Cir. 2000).

As a general rule, questions relating to the bases and sources of an expert's opinion affect the **weight** to be assigned that opinion rather than its **admissibility** and should be left for the jury's consideration." *McDonald v. North America Specialty Ins. Co.,* 224 Fed.Appx. 761, 767, 2007 WL 867190, *4 (10th Cir. 2007) (admissions during witnesses cross-examination only go to the weight of his opinion about the cause of property damage, and have no bearing on the admissibility of his opinion); *Goebel v. Denver and Rio Grande Western R.R. Co.,* 346 F.3d 987, 998-99 (10th Cir. 2003) (indicating that an expert's failure to rule out all possible alternative causal sources does not render the expert's testimony inadmissible); *Compton v. Subaru of Am., Inc.,* 82 F.3d 1513, 1518 (10th Cir. 1996) (stating that if there is a logical basis for an expert's opinion, the weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony), *overruled on other grounds by Kumho Tire Co.,* 526 U.S. at 147, 149. "The burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion." *Robinson v. Missouri Pacific R. Co.,* 16 F.3d 1083, 1090 (10th Cir. 1994). Any perceived issues regarding Dr. Morrissey's lack of firsthand knowledge, if any, would only serve as a basis for defendant to challenge the weight of Dr. Morrissey's opinions, but is not a reason to strike his testimony and opinions.

A.    Minimal case-specific testing and measurements which could only have been obtained by defendant while plaintiff was still working for defendant does not render the methodology utilized by Dr. Morrissey in reaching his opinions unreliable

Defendant highlights portions of Dr. Morrissey's testimony in an effort to persuade this Court that Dr. Morrissey does not possess sufficient "case specific" data necessary to support the methodology underlying his opinions in this case which therefore amount to nothing more than speculation, or to suggest that the questionnaire filled out by plaintiff is not reliable. However, it is important to note, and Defendant acknowledges in its brief, that plaintiff worked for the railroad for nearly 30 years and was an employee in a constantly changing, fluid working environment where no two days on the railroad were ever the same. Specifically, the evidence establishes that plaintiff performed the strenuous tasks expected of a carman employee thousands of times during his career (i.e. lacing air hoses, lining draw bars, replacing couplers and knuckles, removing cross keys from couplers such as he was doing when his shoulder was injured, tightening/releasing handbrakes, walking on large uneven ballast, riding on Kubota tractors over rough terrain).

As set forth in his detailed report *(Ex. 1),* Defendant completely ignores Dr. Morrissey's extensive experience analyzing and evaluating railroad job tasks where he has measured and analyzed the forces involved in performing substantially similar tasks as those performed by plaintiff; his citation to countless government and railroad industry studies and publications specifically with regard to the ergonomic and biomechanical risk factors present in the railroad industry to which plaintiff was exposed; and his reliance on numerous internal BNSF (or its predecessor) documents acknowledging the pervasive presence of risk factors in the carman working environment. *(Ex. 1, pp. 17-20; pp. 28-33)* Instead, Defendant focuses on the understandable fact that he has not been able to specifically quantify the exposures, impacts, vibrations, and forces plaintiff was personally subjected to during his

employment as the basis for its position that Dr. Morrissey's methodology is suspect. However, Defendant's emphasis on the absence of "case specific" quantifiable data is misplaced.

Logically, in a case such as this, it is an impossibility for any expert to have ever actually observed plaintiff in his work environment to measure, inspect and test the actual tools, equipment, working conditions, walking surfaces and the Kubota tractors that plaintiff actually worked with and experienced during his lengthy railroad career because, as is almost always the case, plaintiff was already medically disabled due to his injuries and no longer working for the railroad at the time Dr. Morrissey became involved in this case. For this reason, it is likewise an impossibility for Dr. Morrissey to have obtained quantifiable data concerning the frequency and duration plaintiff performed his employment tasks, and the cumulative forces, impacts and vibrations plaintiff experienced during his nearly 30 year railroad working career. Defendant, and **only** Defendant, had the exclusive and sole ability to obtain data quantifying frequency, duration, forces, impacts and vibration exposures specifically pertaining to Mr. Wright while he was still working, but chose not to do so. If the lack of "case specific" quantifiable data is a legitimate basis to exclude Dr. Morrissey's opinions on foundation grounds, the opinion testimony from defendant's liability expert, Brian Weaver, must also be excluded. Plaintiff last worked for the railroad in February, 2010. Like Dr. Morrissey, all of Mr. Weaver's "case specific evidence" was obtained years after plaintiff last worked for the railroad. Under the strict standard for reliability of expert testimony argued for by defendant in its motion, the methodology and resulting opinions of Mr. Weaver would be equally unreliable and inadmissible.

It is true that neither Dr. Morrissey (nor BNSF's expert Brian Weaver) can offer a quantified dose-response relationship or threshold, or cite a study establishing such a quantified dose-response relationship between the particular railroad job activities Plaintiff performed while employed by BNSF and the specific injuries he has sustained to his spine and shoulder. The absence of such dose-response relationships, or of studies focused separately on each of the specific railroad job activities performed by plaintiff on the BNSF, does not, however, mean that Dr. Morrissey's testimony is not reliable. Here Dr. Morrissey relies in part on an extensive body of literature referred to in his report regarding the kind of workplace ergonomic risks factors to which plaintiff was exposed during his employment with BNSF. That literature includes studies and reports analyzing the tasks performed by carmen and rail employees doing similar tasks in rail industry operations documenting the risks of musculoskeletal/cumulative trauma disorders and traumatic injuries associated with the railroad working environment. That literature also includes epidemiological literature, including peer-reviewed literature, establishing increased risks of spine injuries in the railroad industry from cumulative trauma type injuries which develop over time.  *(Ex. 1)* Dr. Morrissey referred to at least 100 pieces of literature when analyzing plaintiff's work environment. *(Ex.1, pp. 28-33)* Among several others as referenced throughout Dr. Morrissey's lengthy report, Dr. Morrissey cites to and relies on studies, reports and publications from the Federal Railroad Administration *(Ex. 1, pp. 9, 13);* National Institute of Occupational Safety and Health ("NIOSH") *(Ex.1, pp.6, 7, 8, 13, 20,22, 23, 26, 27);* the Association of American Railroads ("AAR") *(Ex. 1, pp. 6, 7, 12,13,14,24);* the National Research Council *(Def. Ex. 3, pp. 8, 20, 23)* and the BNSF itself and its predecessor, the Burlington Northern Railroad *(Ex. 1, pp. 9, 12,17, 18, 19, 20).*  Reliance on the studies,

reports and work of other experts and professionals is appropriately a part of reliable reasoning and methodology if of a type reasonably relied upon by experts in the particular field in forming opinions or inferences. Fed.R.Evid. 703; *Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 588 (7th Cir. 2000).

This is not a toxic tort case. Plaintiff's claim is not based on harm alleged to have been caused by exposure to a chemical in which the premise that the chemical can cause harm to human beings is novel or is lacking in a biologically plausible explanation of the mechanism of injury. Apart from the extensive epidemiological literature and railroad-specific studies reviewed and relied on by Dr. Morrissey, the mechanism of injury as explained by Dr. Morrissey, that wear and tear to the spine can, over time, develop into spine injuries is biologically plausible and is certainly not novel. That wear and tear can play a role in aggravating or causing previously asymptomatic arthritic or degenerative changes to become symptomatic, is also biologically plausible and is not novel. It should be noted that Dr. Morrissey relied upon **all** of the information, literature, photographs and his extensive experience with the railroad industry in arriving at his opinions. No undue reliance was placed on the questionnaire filled out by plaintiff as claimed by defendant. *(Ex. 2, pp. 119:18-124:9)*

Both *Daubert* and *Kumho Tire* recognized that the factor of published studies "is not a *sine qua non* of admissibility" and there were reasons why published studies as to a particular theory or proposition might not exist. *Daubert,* 509 U.S. at 593-94, *see Kumho Tire,* 526 U.S. at 151. *Daubert* stated that "[s]ome propositions, moreover, are too particular, too new, or of too limited interest to be published." *Daubert,* 509 U.S. at 593. For that reason, the "fact of publication (or lack thereof) in a peer reviewed journal will thus be a relevant, though not dispositive, consideration" in assessing reliability. *Id.* at 594.

It is not surprising that there are no epidemiological studies establishing quantified dose-response relationships for the specific activities of throwing railroad switches, setting and releasing rail car hand brakes, coupling air hoses, walking on uneven ballast, vibration exposures in Kubota tractors or removing a cross key from a coupler. These narrow areas of focus epitomize propositions that are "too particular" or "of too limited interest." *Daubert,* 509 U.S. at 593. This is not a situation in which useful animal studies could be conducted as might be the case in chemical exposures. These job activities are performed only by certain employees of railroads and would not be of interest outside the rail industry, and obtaining the task related and medical data for such research would in the real world be possible only if the railroad itself conducted the study or actively cooperated in such a study. Assuming such a study would require comparison of a group of carmen who performed these activities with a group who did not, it is not readily apparent how such a study could be conducted without disruption of rail operations. There are also obvious obstacles to conducting such studies on human subjects in an occupational setting.

Railroad employees such as Plaintiff do not work in an office setting or at a single work station that encompasses all of their job activities. They do not perform the same tasks in the same area of defendant's yard or with the same tools on a daily basis; they perform various job tasks in various locations during their employment. Even the cross keys, which may be viewed as being similar, are not removed in exactly the same manner every time one is removed. Some are relatively easy to remove (such as that depicted in the video provided by Defendant) while others require a significant amount of effort and force to remove and others cannot be removed without cutting them out with a torch. *(Ex. 2, pp. 109:17-110:3, 110:4-7, 10-18; Exhibit 4, former carman Carl Hampton deposition, pp.  85:19-93:12; Exhibit 5, carman Larry Hudson*

*deposition, pp. 97:10-99:23, 103:12-24)*  Carmen do not tighten and release just one specific hand brake, but rather tighten and release numerous different hand brakes on numerous different cars. Handbrakes and air hoses vary in how hard they are to operate based on the particular brake or air hose itself and based on its maintenance or lack thereof. Air hoses vary in how hard they are to couple. These employees do not walk on just one spot; they walk miles a day on top of ballast rock surfaces at various locations.

In *Hardyman v. Norfolk & Western Railway Co.,* 243 F.3d 255 (6th Cir. 2000), a case involving a brakeman/conductor and the cumulative type injury of carpal tunnel syndrome ("CTS"), the Court stated that:

> We further recognize that it makes little sense to require a plaintiff to establish a dose/response relationship or threshold level in a situation where there has been no scientific study conducted specifically on railroad brakemen and where the dose/response relationship or threshold level will always vary from individual to individual. Such a requirement essentially would foreclose plaintiffs from recovering for CTS against negligent employers unless their particular job has been the subject of a national, epidemiological study on CTS.

*Hardyman,* 243 F.3d at 265.

In *Westberry v. Gislaved GUMIni AB,* 178 F.3d 257 (4th Cir. 1999), a chemical exposure case, the Court recognized human exposure to risks often does not occur "in a manner that permits a quantitative determination of adverse outcomes." *Id.* at 264. Exposures frequently occur in occupational settings and even then "it is usually difficult, if not impossible, to quantify the amount of exposure." *Id.* The court held that:

> Consequently, while precise information concerning the exposure necessary to cause specific harm to humans and exact details pertaining to the plaintiff's exposure are beneficial, such evidence is not always available, or necessary, to demonstrate that a substance is toxic to humans given substantial exposure and need not invariably provide the basis for an expert's opinion on causation.

*Id.* at 264.

In *Kelly v. Illinois Central Railroad Company,* 2010 WL 271959 (C.D.I11. 2010), the district court denied a motion to bar plaintiff's ergonomic/biomechanical engineering expert's testimony and addressed the issue as follows:

> Specifically, Illinois Central argues that Kress' methodology is flawed for the failure to offer any minimum threshold or level of the risk factors he identifies which would be sufficient to cause Kelly's alleged injuries. The thrust of this argument is that since Kress did not conduct his own case-specific testing to Kelly's methods in performing his job while he was working or to quantify forces, exposures, impacts, and vibrations that Kelly was subjected to during his employment, his opinion in unreliable.
> However, this argument if taken to its logical conclusion would require an expert to become involved and study how a plaintiff performed his job while still employed by the railroad, which is practically unworkable and, in many cases, would require an expert to become involved even before a plaintiff becomes aware that they had suffered a permanent injury. The Court does not believe that *Daubert* requires this kind of result.

*Kelly,* 2010 WL 271959 at *10. The court concluded that the "nature of some of the factual bases for Kress' opinion, application of scientific literature/studies to Kelly's situation, or alleged failure to take other causes of Kelly's injuries into consideration could serve as a basis for ICRR to challenge the weight of his opinion, but are not a sufficient reason to bar his testimony." *Kelly,* 2010 WL 271959 at *11 (citation omitted).

Defendant's motion minimizes (and in many instances misconstrues) the factual information Dr. Morrissey has with respect to the details of Plaintiff s work. Dr. Morrissey reviewed plaintiff's deposition testimony and interviewed plaintiff to obtain information regarding the daily work tasks plaintiff performed and the work environment he was subjected to on a daily basis over numerous years. *(Ex. 1, p. 1)* He has also reviewed a lengthy questionnaire to get a sense for plaintiff's general feeling of the time spent doing

various job tasks during his lengthy career as a carman with defendant and confirmed postures plaintiff's work duties required. *(Ex. 2, 119:16-21)* He has obtained characterizations of these tasks and the frequency with which carmen perform these tasks from his involvement in other cases involving employees of BNSF (and other railroads) who have sustained musculoskeletal cumulative trauma injuries substantially similar to those sustained by plaintiff. He is familiar with the BNSF work and safety rules from his work in this case and several other cases. He has personally seen and observed these tasks being performed. He has confirmed that certain photographs accurately show job activities plaintiff performed during his employment with defendant associated with handbrakes and air hoses he has measured in the past and has seen documented in the literature. It is undisputed Dr. Morrissey does not have measurements of forces for the specific equipment Plaintiff put his hands on and worked with on BNSF property on January 20, 2010, or quantifiable data concerning the actual forces, impacts and vibrations plaintiff experienced on a daily basis. However, given the totality of the information available to Dr. Morrissey which he reviewed and considered in this case, his knowledge of the details of plaintiff's work is not, as defendant would have this Court believe, based simply on his own "speculation." *(Ex.1)* It should also be noted that defendant's retained expert, Brian Weaver, did conduct an inspection of the defendant's Cherokee yard and videotaped an employee performing the removal of a cross key, which was the job task plaintiff was performing at the time of his injury on January 20, 2010, and in fact Mr. Weaver performed that job task himself, but Mr. Weaver did not measure the forces involved in

those activities even though he could have done so. *(Exhibit 6, Weaver deposition, p. 57:2-4)*

Questions relating to the bases and sources of an expert's opinion affect the **weight** to be assigned that opinion rather than its **admissibility** and should be left for the jury's consideration. *McDonald v. North America Specialty ins. Co.,* 224 Fed.Appx. 761, 767, 2007 WL 867190, *4 (**10**[th] Cir. 2007); see also *Primrose Operating Co. v. National American Ins.,* 382 F.3d 546, 562 (5th Cir. 2004) (as "a general rule questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration"). It is the role of the adversarial system, not the court, to highlight weak evidence. They may be addressed by cross-examination and presentation of contrary evidence by BNSF. *Robinson v. Missouri Pacific R. Co.,* 16 F.3d 1083, 1090 (10th Cir. 1994); *See Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

The Sixth Circuit in *Hardyman v. Norfolk & Western Railway Co.,* 243 F.3d 255 (6th Cir. 2000) addressed the admissibility of expert ergonomic testimony concerning cumulative injuries under Rule 702 in the context of railway workers such as conductors. The Sixth Circuit reversed the district court's exclusion of the specific causation testimony of plaintiff's ergonomic and medical experts and a summary judgment in favor the railroad based on lack of causation evidence. But the court went on to hold that even if the district court had not abused its discretion in excluding specific causation expert testimony, plaintiff's ergonomic

expert would nevertheless still have been permitted to testify as to facts going to general causation, stating that,

> "nothing would preclude expert testimony as to the generally accepted risk factors for the development of CTS, the number of risk factors and the degree to which each was present in Plaintiffs job, and the specific tasks required in each of Plaintiffs job requirements during the course of his employment with Norfolk. Finally, nothing would preclude Plaintiff from testifying as to his work and non-work related activities."

*Hardyman,* 243 F.2d at 269. Other courts have likewise held that such general causation testimony from an ergonomic expert to be admissible under Rule 702. *Wilcox* v. *CSX Transportation, Inc.,* 2007 WL 1576708, \*13-15 (N.D. Ind. 2007); see also *Miller v. CSX Transportation, Inc.,* 858 A.2d 1025, 1065-1067, 1074-1076 (Md. App. 2004).

The U.S. District Court for the Western District of Oklahoma has previously considered a motion in limine filed by BNSF in concerning the testimony and opinions of Dr. Morrissey (the same Dr. Morrissey as in this case) and ruled that Dr. Morrissey's opinions concerning causation were reliable and thus admissible. See Judge DeGiusti's Order of September 12, 2011 in *Smith v. BNSF Railway Company*, No. CIV-08-1203-D submitted herewith. *(Exhibit 7)* Judge DeGiusti correctly ruled that Dr. Thomas' opinion testimony was admissible, and that any deficiency in his opinions of for cross-examination and not admissibility. See also the Order Denying Defendant's Motions to Exclude and for Summary Judgment from the U.S. District Court for the Eastern District of Washington *in Tressler v. BNSF Railway Company,* No.: CV -10-188-RMP dated February 1, 2012 *(Exhibit 8)*. In *Tressler,* the District Court denied BNSF's *Daubert* motion pertaining to plaintiff's retained industrial hygienist, who also did not conduct an on-site inspection or measure the forces involved in

19

plaintiff's job activities, and was less qualified than Dr. Morrissey to offer expert testimony, with only a Bachelor's degree and experience in the field of occupational safety and health, holding:

> The methodology Ms. Copeland employs on this issue is sufficiently reliable for admission under Fed. R. Evid. 702, and the inquiry fits the issues in this case by focusing on the question of what BNSF may have known when, and what action or inaction would have been reasonable in light of those circumstances. *See CSX Transportation,* 131 S.Ct. at 2643 (for purposes of a FELA negligence claim, the key question on the duty of care element is what would have been reasonably foreseeable to a carrier in similar circumstances).

B.     Dr. Morrissey's opinions will assist the trier of fact

The evidence in this case, and the opinions to be offered by Dr. Morrissey based upon his education, extensive experience in the rail industry, and his review of the evidence, are highly relevant and admissible pursuant to Fed. R. Evid. 702 and 703 to prove foreseeability of harm, breach of the duty owed by defendant to plaintiff, and general causation; three (3) elements of plaintiff's FELA claim. As the above citations clearly establish, a railroad may be liable for an unsafe workplace under the FELA when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees. Dr. Morrissey's testimony unequivocally establishes that defendant knew, or should have known that its employees, including Mr. Wright, were being exposed to unreasonable and unnecessary risk factors for musculoskeletal injuries due to known ergonomic and biomechanical risk factors in the work environment, and that these known risk factors and work exposures generally can cause or contribute to cause the types of musculoskeletal injuries plaintiff has sustained. Likewise, Dr. Morrissey's testimony will also establish that the job Mr. Wright was doing when he injured his shoulder on January 20,

2010 was also the result of exposure to unreasonable and unnecessary risk for the disabling injury he suffered to his shoulder.

<u>CONCLUSION</u>

The opinions to be offered by Dr. Stephen Morrissey are highly relevant and reliable under Fed. R. Evid. 702 and 703 and the *Daubert* standards, and admissible to prove general causation, foreseeability of harm and breach of duty owed by BNSF to Mr. Wright — three (3) elements of plaintiff's FELA claim. Defendant can explore, through cross-examination, any perceived weaknesses in the underpinnings of Dr. Morrissey's opinions. *Robinson v. Missouri Pacific R. Co.,* 16 F.3d 1083, 1090 (10th Cir. 1994). In sum, all of Dr. Morrissey's opinions are relevant and reliable pursuant to *Daubert* and its progeny and defendant's motion must be denied.

WHEREFORE, Plaintiff respectfully requests this Court DENY Defendant's Motion in its entirety.

Respectfully submitted,

THE GAGE LAW FIRM

  // Edwin Gage //                       
Edwin Gage, OBA #3197
124 South 4th Street
Muskogee, OK 74401
918-682-0555
914-687-4731 (fax)
Elgage1940@sbcglobal.net

21

AND

BAUER & BAEBLER, P.C.

   // Joseph L. Bauer, Jr. //
Joseph L. Bauer, Jr., MO Bar No. 24761
Bauer & Baebler, P.C.
1716 South Broadway
St. Louis, MO 63104
Telephone (314)-241-7700
Facsimile (314) 241-0003
jbauer@bauer-baebler.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

Comes now the undersigned and hereby certifies that the preceding document was submitted via the Court's electronic filing system this 11th day of January, 2016 to all counsel of record:

George E. Gibbs, Esq.
George Mullican, Esq.
Jamie A. Rogers, Esq.
Gibbs Armstrong Borochoff
        Mullican & Hart, P.C.
601 S. Boulder Ave., Ste. 500
Tulsa, OK 74119
*Attorneys for Defendant*

   // Joseph L. Bauer, Jr. //

22