IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES E. WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-CV-24-JED-FHM |
| ) | |
| BNSF RAILWAY COMPANY ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff James E. Wright brings this action against defendant Burlington Northern Santa Fe Railway Company ("BNSF") pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et. seq.*, alleging an acute injury claim and a cumulative trauma claim. (Doc. 2). BNSF now moves for summary judgment on both of plaintiff's claims. (Doc. 123).

### BACKGROUND

Defendant BNSF is a railroad corporation engaged in interstate transportation and commerce. Plaintiff was employed by BNSF as a carman for twenty-nine years and nine months, until February 19, 2010. He was a carman on the repair track for approximately 17 years, and was then a carman on the road truck for approximately 12 years. Plaintiff filed this lawsuit on January 11, 2013. His first claim arises from an event that occurred on January 20, 2010, which he alleges injured his left shoulder, and his second claim alleges cumulative trauma sustained during his employment with BNSF that resulted in injuries to his cervical and lumbar spine. Plaintiff contends that BNSF is liable for the damages he incurred pursuant to FELA. The specific facts giving rise to each of plaintiff's claims are discussed below.

### I.     Acute Injury

Plaintiff's complaint alleges that he sustained injures to his left shoulder while in the performance of his duties on January 20, 2010, when he used a five-foot bar to drive out a cross key on a hopper car. Plaintiff alleges that his injuries were a result of BNSF's negligence in that BNSF failed to provide him a reasonably safe work place.

### II.    Cumulative Trauma

Plaintiff's complaint also alleges cumulative trauma injury resulting from his employment with BNSF, specifically, that he sustained severe and permanent injuries to his cervical and lumbar spine, degenerative disc disease, disc narrowing, osteophyte formation, disc protrusion, nerve damage, and severe and permanent injuries to his left arm, left shoulder, left hand, right buttock, right thigh, right calf, and right foot. Plaintiff alleges that his injuries were the result of BNSF's negligence, in that BNSF failed to provide a reasonably safe work place by requiring him to engage in excessive, dangerous, constant and repetitive manual labor.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the district court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see*

*also Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56(a), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In its review, the Court must construe the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

## DISCUSSION

BNSF moves for summary judgment on three grounds. First, BNSF argues that plaintiff cannot establish BNSF's negligence on his acute injury and cumulative trauma claims. Second, BNSF contends that plaintiff cannot establish causation on his cumulative trauma claim. Lastly, BNSF argues that plaintiff's claim as to his lower back injury is barred by FELA's statute of limitations.

FELA was enacted to provide a remedy to railroad employees in response to the number of "'injuries and death resulting from accidents on interstate railroads.'" *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) (quoting *Urie v. Thompson*, 337 U.S. 163, 181 (1949)). Under FELA, "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. Importantly, FELA is a general negligence statute that "neither prohibits nor requires specific conduct by a railroad." *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 775 (7th Cir. 2000).

"The standard applied by federal courts in determining whether there is sufficient evidence to send a FELA case to the jury is significantly broader than the standard applied in common law negligence actions." *Metcalfe v. Atchison, T. & S. F. Ry. Co.*, 491 F.2d 892, 895 (10th Cir. 1974). To establish a prima facie case under FELA, the plaintiff must prove that: (1) he was injured within the scope of his employment; (2) his employment was in furtherance of the railroad company's interstate transportation business; (3) that the railroad company was negligent; and (4) that the railroad company's negligence played some part in causing the injury for which the plaintiff seeks compensation under FELA. *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007). Under FELA, a "relaxed" standard of causation applies, *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2632 (2011), and the "employer's negligence need not have been the sole cause of injury," *Chaffin v. Union Pac. R. Co.*, 192 F. App'x 739, 746 (10th Cir. 2006) (unpublished).

Here, the first two elements of the prima facie case are not at issue. BNSF contends that plaintiff cannot prove negligence on plaintiff's acute injury and cumulative trauma counts, or causation as to the cumulative injury count.

**I.     Negligence**

A plaintiff must establish all of the elements of common law negligence in order to prevail on a FELA claim. *Standard v. Union Pac. R. Co.*, 34 F. App'x 629, 631 (10th Cir. 2002) (unpublished). Thus, plaintiff carries the burden of demonstrating duty, breach, foreseeability, and causation. *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990). It is well-established that a railroad has the duty to provide its employees with a reasonably safe workplace. *See, e.g.*, *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007). A railroad breaches this duty when it knew or should have known that its standards of conduct were inadequate to protect the plaintiff and similarly situated employees. *Id.*

To survive a motion for summary judgment, plaintiff must therefore present record evidence which creates a genuine issue of material fact as to whether defendant provided a reasonably safe workplace. BNSF argues that plaintiff cannot establish negligence on his acute injury claim because there is no evidence to support plaintiff's allegations that BNSF negligently failed to provide plaintiff with adequate manpower or adequate tools. (Doc. 123 at 17-18). In response, plaintiff contends he has presented more than a sufficient factual basis to show that BNSF failed to provide him a reasonably safe place to work. (Doc. 136 at 19).

**A.     Lack of Adequate Manpower**

BNSF argues that plaintiff has no evidence to support his allegation that BNSF failed to provide him adequate manpower. Importantly, the parties disagree over whether the task of

5

removing, or "driving out," a cross key should be completed by one person or by two people. BNSF cites portions of plaintiff's expert's testimony, where Dr. Morrissey testified that a cross key can be safely removed by one person. (Doc. 123 at 18). Similarly, BNSF references former carman Robert Rhodes' deposition testimony where he acknowledged that removing a cross key is a one person job. (*Id.*). Plaintiff disputes BNSF's representation of these statements, stating that carman Mr. Rhodes testified that he never removed a cross key by himself, and that the task was always completed by two people. (Doc. 136, Ex. 13, 42:6-17). Dr. Morrissey, plaintiff's expert, testified that a cross key can "perhaps" be removed safely by one person, but that there were "recognized hazards" in doing so. (Doc. 136, Ex. 2, 183:16-184:15). Plaintiff testified that removing the cross key "should be" a two-person job. (Doc. 136, Ex. 3, 202:18-22). He noted that on the repair track, the same task was always completed by two people.[1] (Doc. 136, Ex. 3, 202:4-203:2).

Thus, there is a genuine issue of material fact as to whether the task of removing a cross key required two people and as a result, whether BNSF's practice of permitting carmen working on the car track to remove cross keys alone was unreasonably unsafe. Likewise, plaintiff has produced enough evidence to show that BNSF knew or should have known that allowing plaintiff to perform the task of removing a cross key alone was inadequate to protect him. BNSF's motion for summary judgment as to plaintiff's allegation of inadequate manpower is **denied**.

---

[1] Plaintiff admitted that on the date of his acute injury claim, January 20, 2010, he did not ask for assistance in removing the cross key. (Doc. 136, Ex. 3, 203:12-14). He stated he could have asked for help, but did not because he was not having trouble with the cross key. (Doc. 136, Ex. 3, 118:10-18). Plaintiff also explained that he was usually "down there by himself and they expected him to [work alone] on a daily basis." (Doc. 136, Ex. 3, 203:3-11). He testified that it was "the norm" for him to work alone and that he worked alone seventy-five percent of the time. (Doc. 136, Ex. 3, 204:21-205:2, 64:15-17).

B.     Adequate Tools

In response to plaintiff's claim that BNSF should have provided plaintiff with better tools, BNSF states that it is not obligated to provide the "best or most technologically advanced equipment." (Doc. 123 at 18). BNSF argues that plaintiff has no reliable evidence in support of its claim, as plaintiff only relied on Dr. Morrissey's opinion, which employed flawed methodology. (*Id.*). BNSF also states that Dr. Morrissey's "opinion on better tools" conflicts with plaintiff's testimony that the five-foot bar was the right tool for the job and that he is unaware of a better tool to remove a cross key. (*Id.*).

Plaintiff disputes BNSF's presentation of the facts, specifically as to whether the five-foot bar plaintiff used to remove the cross key is the best tool to remove the cross key. Plaintiff's version of the facts is as follows: plaintiff testified that in his twenty-nine years of working at the railroad, the five-foot bar was the most commonly used method of knocking out the cross key. (Doc. 123, Ex. 3, 203:21-204:4). Plaintiff testified that he would have used another bar, called a chisel bar, if there was another person helping him on January 20. (Doc. 136, Ex. 3, 87:21-88:10). Plaintiff further testified that using a hydraulic cross key puller would have made the task easier. (Doc. 136, Ex. 3, 115:22-116:7). Plaintiff testified that the repair track had a hydraulic cross key puller, but the road truck where plaintiff worked did not. (Doc. 136, Ex. 3, 117:12-22). Plaintiff stated that his claim was based on the fact that the "road truck wasn't equipped with the same equipment that the repair track had to do the same task." (Doc. 136, Ex. 3, 117:1-5). Plaintiff also testified that he was trained to use the five-foot bar to remove the cross key but this required him to use force and was not an easy task. (Doc. 136, Ex. 3, 114:22-115:13).

Here, plaintiff has failed to set forth sufficient evidence to raise a genuine issue of material fact as to whether BNSF negligently failed to provide plaintiff with adequate tools to perform his job duties. While the Court rejected BNSF's arguments regarding Dr. Morrissey's opinion (*see* Doc. 179), plaintiff's evidence remains insufficient even when viewed in a light most favorable to him. Critically, plaintiff makes no allegation that using the five-foot bar was unsafe, but only argues that there were easier, better methods of completing the task. This alone cannot establish negligence under FELA. *See Volner v. Union Pac. R.R. Co.*, 509 F. App'x 706, 708-09 (10th Cir. 2013) (unpublished) (granting railroad's motion for summary judgment on acute injury claim in part because plaintiff's argument as to the "difficulty performing his job [was] not enough to show the job was unsafe or that [the railroad] required him to perform the job in an unsafe manner."); *Soto v. S. Pac. Transp.*, 644 F.2d 1147, 1148 (5th Cir. 1981) ("That there are other, arguably more advanced, methods in use by the defendant for [accomplishing the task at hand] is of no significance where the method in use by [the plaintiff] was not an inherently unsafe one."); *Lewis v. CSX Transp., Inc.*, 778 F. Supp. 2d 821, 837 (S.D. Ohio 2011) (finding that plaintiff's "testimony is not evidence that his job was unreasonably unsafe or that [the railroad] required him to perform that job in an unreasonably unsafe manner."); *McKennon v. CSX Transp., Inc.*, 897 F. Supp. 1024, 1027 (M.D. Tenn. 1995), *aff'd*, 56 F.3d 64 (6th Cir. 1995) ("The fact that there may have been an automated, or safer method, of work does not automatically render the chosen method unsafe or negligent for purposes of FELA. Under FELA, the proper inquiry is whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task." (internal citation omitted)).

As such, plaintiff has not presented any evidence to show that by failing to provide plaintiff with alternative methods to remove the cross key, BNSF failed to do what a reasonably prudent employer would do to make the work environment safe. Nor has plaintiff shown that BNSF "knew, or by the exercise of due care should have known, that prevalent standards of conduct were inadequate to protect [him]." *Urie v. Thompson*, 337 U.S. 163, 178 (1949). BNSF's motion for summary judgment on this ground is therefore **granted**.

## II.     Causation

To recover under FELA, plaintiff must also prove that BNSF's acts caused plaintiff's alleged injury. Under FELA's relaxed standard of causation, "'the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" *CSX Transp., Inc.*, 131 S. Ct. at 2636 (2011) (quoting *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506 (1957)); *see also Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 259 (6th Cir. 2001) ("The test for causation in FELA cases is whether an employer's actions played any part at all in causing the injury.").

BNSF argues that summary judgment is proper on plaintiff's cumulative trauma claim because plaintiff cannot produce any evidence to show causation.[2] (Doc. 123 at 19). BNSF's argument is based solely on its contention that Dr. Morrissey's opinion regarding causation is unreliable and should be excluded. (*Id.*).

BNSF cites the opinion of its expert, Brian Weaver, P.E., who concluded that plaintiff's job duties as a carman were reasonably safe from a biomechanics perspective. (Doc. 123, Ex. 5,

---

[2] BNSF does not challenge causation on plaintiff's acute injury claim, but concedes that "there is enough evidence to create a jury question on whether [plaintiff] suffered an injury on January 20, 2010, when he was driving out a cross key and felt a 'pop' in his left shoulder." (Doc. 123 at 21).

¶ 3. BNSF also references Mr. Weaver's opinion that there is no engineering, scientific, or biomechanical basis to conclude that plaintiff's degenerative changes in his lumbar spine and cervical spine, and left shoulder condition were caused as a result of his work at BNSF. (Doc. 123, Ex. 5, ¶ 1). As the Court denied BNSF's motion to limit Dr. Morrissey's expert opinion testimony (Doc. 179), BNSF's argument that Mr. Weaver's opinion is uncontested fails. Plaintiff provides evidence regarding general causation via Dr. Morrissey's report, which details the ergonomic risk factors that plaintiff was exposed to during his employment with BNSF, presents evidence that wear and tear to the spine can develop into spine injuries, and that wear and tear can play a role in aggravating or causing "previously asymptomatic arthritic or degenerative changes to become symptomatic." (Doc. 136 at 21-22). Dr. Morrissey's report also provides evidence that there was industry recognition of the ergonomic risk factors, specifically heavy physical, postural, and environmental stresses, present in the work plaintiff performed as a carman. (Report at 17). Plaintiff seeks to rely on testimony from his nine treating physicians to establish specific causation—that plaintiff's working environment contributed to his spinal injuries. (Doc. 136 at 17-18).

In light of the evidence and FELA's relaxed standard of causation, the Court finds sufficient evidence for a jury to determine that BNSF's actions played at least some part in causing plaintiff's cumulative trauma. Summary judgment on this ground is therefore **denied**.

### III.     Statute of Limitations

BNSF asserts that plaintiff's claim regarding his back injury is barred by the statute of limitations. Under FELA, a plaintiff must commence the action "within three years from the day the cause of action accrued." 45 U.S.C § 56. In the absence of statutory language defining when a cause of action accrues under FELA, the Supreme Court has developed the "discovery rule."

*See United States v. Kubrick*, 444 U.S. 111, 120 (1979). Under the discovery rule, the "federal 'statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'" *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001) (citations omitted). Thus, a FELA claim begins to accrue when the plaintiff knows or should know that his injury is work-related. *Id.* at 1236; *see also Robinson v. BNSF Ry. Co.*, 553 F. App'x 792, 796 (10th Cir. 2014) (unpublished) ("Accrual of a FELA claim does not depend on a formal medical diagnosis."). The discovery rule "imposes on plaintiffs an affirmative duty to exercise reasonable diligence and investigate the cause of a known injury." *Matson*, 240 F.3d at 1235.

Plaintiff filed this lawsuit on January 11, 2013. (Doc. 2). Accordingly, the Court must determine whether the evidence in the light most favorable to plaintiff demonstrates that he did not know of the existence or cause of his back injury prior to January 11, 2010.

As to the first element—existence of an actual injury—BNSF contends it is entitled to summary judgment because plaintiff admitted to Dr. Schoedinger that he had an episode of back pain in 2003. (Doc. 123 at 25; Doc. 123, Ex. 10, 19:5-10). BNSF cites Dr. Schoedinger's report, which indicates that an MRI from 2003 revealed that plaintiff had a bulging disc. (Doc. 123, Ex. 19). BNSF references plaintiff's deposition testimony where he attributed his back problems in 2003 to his railroad work. (Doc. 123, Ex. 1, 171:4-10). BNSF argues in the alternative that summary judgment is proper because plaintiff visited Dr. Brenner for lower back pain in 2007 and provided the following reasons for visiting: "bouncing in work truck" and "heavy lifting at work." (Doc. 123 at 25; Doc. 123, Ex. 1, 168:4-10).

In response, plaintiff argues that he did not know he had an actual injury to his low back until summer 2010, when Dr. Schoedinger informed him that he had disc problems in his neck

11

and low back problems. (Doc. 136 at 25). Plaintiff further disputes BNSF's representation that plaintiff attributed his disc bulge to working at the railroad, because plaintiff later testified in his deposition that he wasn't sure that he attributed the injury to his work. (Doc. 136, Ex. 3, 170:16-22). Plaintiff also testified at his deposition that his back pain "always got better." (Doc. 136, Ex. 3, 180:14-15).

Viewing the evidence in a light most favorable to the plaintiff, the Court finds that summary judgment is not proper because there is insufficient evidence to show that plaintiff knew of the existence of his low back injury prior to January 2010. Courts grant summary judgment motions on statute of limitations grounds only where there is evidence the plaintiff exhibited chronic or persistent symptoms well before the three-year period. *See Matson*, 240 F.3d at 1236 (granting summary judgment on statute of limitation grounds in part because plaintiff complained of chronic back pain more than three years before filing his FELA lawsuit); *Robinson*, 553 F. App'x at 797 (plaintiff could not defeat summary judgment motion where he exhibited worsening and persistent symptoms of his injury over three years before filing FELA lawsuit). Here, however, there is a genuine dispute as to when plaintiff's injury manifested itself, as plaintiff testified that his low back problems would go away. (Doc. 136, Ex. 3, 180:14-15). Drawing all reasonable inferences in plaintiff's favor, the record supports a view that plaintiff's 2003 and 2007 complaints were isolated incidents and there were no signs that his injury "continued to progress," as BNSF suggests. (Doc. 123 at 24). The jury may determine whether plaintiff was or should have been aware of his low back condition prior to January 11, 2010, and whether plaintiff exercised reasonable investigative diligence.

As the Court finds that a genuine dispute exists as to plaintiff's knowledge of the existence of his actual injury, the Court need not address the issue of causation. Summary judgment is therefore inappropriate.

## CONCLUSION

For the reasons set forth above, the Court **grants in part and denies in part** BNSF's Motion for Summary Judgment (Doc. 123).

**SO ORDERED** this 1st day of April, 2016.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE