**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JAMES E. WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:13-CV-24-JED-FHM |
| v. ) | |
| ) | |
| BNSF RAILWAY COMPANY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is plaintiff's Motion for Partial Summary Judgment (Doc. 127), and defendant BNSF Railway Company's ("BNSF") Motion for Sanctions (Doc. 154), which requests that the Court strike plaintiff's Motion for Partial Summary Judgment and Reply as frivolous. Both parties filed responses to the motions. (Docs. 131, 158).

For the reasons discussed herein, the Court finds that BNSF's Motion for Sanctions (Doc. 154) is **denied** and plaintiff's Motion for Partial Summary Judgment (Doc. 127) is **denied**.

**BACKGROUND**

This cause of action arises out of BNSF's alleged failure to provide safe working conditions to its employees at BNSF's Cherokee train yard located in Tulsa, Oklahoma. The plaintiff, James E. Wright, brings two claims pursuant to the Federal Employers' Liability Act ("FELA"). Count I alleges that plaintiff sustained particular injuries January 20, 2010 and is not the subject of plaintiff's motion for summary judgment. Plaintiff moves for summary judgment on Count II, which alleges plaintiff suffered cumulative trauma injuries accrued over the course of his twenty-nine (29) year career as a carman employed by BNSF.

Plaintiff's summary judgment motion is premised on the doctrine of issue preclusion, also referred to as collateral estoppel, based on the 2009 verdict obtained against BNSF by

plaintiff and former carman Dwight Compton in *Compton v. BNSF Railway Company*, 7-CV-328-TCK-PJC.[1] In *Compton*, the jury found that BNSF was negligent, that its negligence was the proximate cause of Compton's cumulative trauma injuries, and awarded Compton two million dollars. (Doc. 127, Ex. 2). The plaintiff in this case asserts that because the liability issue was resolved in *Compton*, it should not be relitigated. (Doc. 127, ¶ 13). Specifically, plaintiff argues that the jury's verdict in favor of the plaintiff in *Compton* (Doc. 127, Ex. 2), coupled with the jury instructions defining negligence (Doc. 127, Ex. 3), amount to a finding that the work place provided to the plaintiff in this case was not reasonably safe under FELA. (Doc. 127, ¶¶ 4, 13). Plaintiff requests that the Court apply the principles of collateral estoppel and grant his summary judgment motion on the issue of liability for Count II, his cumulative trauma claim. Plaintiff concedes that the issues of causation and damages should be determined by the jury. (Doc. 127, ¶ 14).

In response, BNSF filed a motion for sanctions, arguing that plaintiff violated Rule 11(b) of the Federal Rules of Civil Procedure by filing the motion for partial summary judgment and requests that plaintiff's briefing be stricken. (Doc. 154 at 1).

## DISCUSSION

As BNSF's motion for sanctions seeks to strike plaintiff's motion for partial summary judgment, the Court addresses BNSF's motion first.

**I.    BNSF's Motion for Sanctions**

BNSF asserts that plaintiff committed the following two Rule 11 violations in its motion for partial summary judgment: (1) plaintiff failed to apply the appropriate legal standards for offensive non-mutual collateral estoppel, and (2) plaintiff lacks facts to support his claim that the

---

[1] Plaintiff's brief cites the case as 06-CV-534. To be clear, the case was transferred from the Eastern District of Oklahoma to the Northern District of Oklahoma (07-CV-328, Doc. 7), where it was litigated and resolved.

facts in this case are identical to the facts in the *Compton* case. (Doc. 154 at 1). Consequently, BNSF argues that plaintiff's motion is frivolous and should be stricken.

While the Court agrees that plaintiff's summary judgment motion is deficient in several respects, as further discussed herein, the Court does not find that Rule 11 sanctions are appropriate. Further, BNSF has not established that plaintiff's motion was brought with the purpose to harass BNSF, cause unnecessary delay, or needlessly increase the cost of litigation. *See* Fed. R. Civ. P. 11(b)(1). It is also unclear how BNSF's argument that it "should not have to repeatedly respond to offensive non-mutual collateral estoppel arguments in other cases" (Doc. 154 at 1) weighs in favor of sanctioning plaintiff and striking plaintiff's motion. The Court also notes that BNSF's Motion provides no authority on striking a summary judgment motion as a sanction under Rule 11(b).

Accordingly, the Court **denies** BNSF's Motion for Sanctions (Doc. 154).

## II.     Plaintiff's Partial Motion for Summary Judgment

Plaintiff argues that summary judgment is proper as to his claim of cumulative trauma under the doctrine of issue preclusion, also referred to as collateral estoppel. As a preliminary matter, and as recognized in BNSF's Response (Doc. 131 at 3), the Court notes that plaintiff's Motion violates Local Civil Rule 56.1(b) in that it does not begin with a statement of undisputed material facts. Rather, the Motion contains no headings and is comprised solely of fourteen numbered paragraphs. As the facts plaintiff relied on were discernable, the Court declines to strike the brief in its entirety at this time. Counsel are advised that future failures in this regard will not be similarly overlooked.

### A.     Legal Standard for Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "A fact is 'material' only if it might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The dispute over the material fact must be "genuine" such that a reasonable jury could find in favor of the nonmoving party. *Id.* The district court thus must determine "whether the evidence presents a sufficient disagreement [about that material fact] to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence should be taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

### B.     Collateral Estoppel

The doctrine of collateral estoppel is premised on the rationale that "'[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). "If the components of collateral estoppel are satisfied, its benefits of economizing judicial resources and lessening the burdens of relitigating identical issues already decided, would be afforded a non-mutual plaintiff provided defendant had previously had a full and fair opportunity to litigate the issue." *Id.* The trial court has broad discretion in determining whether a plaintiff can make use of offensive non-mutual collateral estoppel. *Id.*

The Supreme Court has sanctioned the use of offensive collateral estoppel, stating that "[s]ince a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979).

The elements of collateral estoppel are well-established. The moving party must show:

> (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Dodge*, 203 F.3d at 1198. The burden of establishing the various elements is on "the party seeking to enforce collateral estoppel." *T.G. v. Remington Arms Co.*, 2014 U.S. Dist. LEXIS 41941, at *25 (N.D. Okla. Mar. 28, 2014). The trial court is also permitted to rely upon certain discretionary factors that turn on fairness and judicial efficiency. *See Parklane*, 439 U.S. at 329-31.

The four elements provided in *Dodge* govern plaintiff's Motion.[2] The parties do not dispute the second and fourth elements. As to element two, a jury verdict in Compton's favor was rendered in 2009 and it was a final judgment on the merits of the claim. Additionally, BNSF has made no claim that the *Compton* judgment is void for lack of opportunity to litigate in conjunction with element four. Thus the Court must assess elements one and three: whether the

---

[2] Plaintiff's Motion makes reference to the "defensive" use of "res judicata or collateral estoppel" and cites supporting authorities from the Third and Eighth Circuits. (Doc 127, ¶5). To be clear, the relevant inquiry here is that of *offensive non-mutual collateral estoppel*, or issue preclusion, where "a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Parklane*, 439 U.S. at 329.

issues in both cases are identical, and whether the parties in both cases are in privity with one another.

### 1. Identity of the issues

Plaintiff asserts that there is identity in the present case because both cases involve "identical, or very similar, claims of negligence" by plaintiffs who "have suffered cumulative trauma injuries as a result of the work conditions provided by defendant at the Cherokee Yard in Tulsa." (Doc. 127 ¶¶ 3, 9). In response, BNSF argues that the issues in *Compton* are not identical to that of the present case and that plaintiff's "concession" that the claims are very similar "is fatal to Plaintiff's quest for partial summary judgment." (Doc. 131, p. 13).

For collateral estoppel, or issue preclusion, to apply, "the precise question at issue must have been raised and determined in the prior suit. Issue preclusion is not warranted given uncertainty as to whether the question was decided." *Fulsom Const. Co. Inc. v. U.S. Fid. & Guar. Co.*, 2005 WL 2542860, at *3 (10th Cir. Oct. 12, 2005) (unpublished). In making a determination of whether the issues are identical, courts consider jury instructions from the prior case, any findings of fact or conclusions of law, and the prior judgment. *See Dodge*, 203 F.3d at 1198. The district court must "focus on what was actually litigated and who should be bound and benefit" from the judgment in the prior case and "the record must clearly memorialize" the issue that was previously decided. *Id.* at 1200.

BNSF's reliance on *Dodge* is appropriate. In *Dodge*, a group of residents sued a company for negligently operating a uranium mill. *Dodge*, 203 F.3d at 1194. The jury returned a verdict finding that the mill was negligently operated. *Id.* Later, another group of plaintiffs filed suit against the same company, and sought to use collateral estoppel to prevent relitigation

6

of the negligence issue. The district court determined that collateral estoppel applied and concluded that the company's negligence would not be relitigated. *Id.* at 1197.

On appeal, the Tenth Circuit reversed and remanded the case for a new trial, based on its determination that the district court improperly applied offensive collateral estoppel. *Id.* at 1192-93. The Tenth Circuit observed that although the plaintiffs' complaint contained eleven allegations of negligence, the jury received a single general question regarding the company's negligence, and thus it was unclear what the jury's verdict was based upon. *Id.* at 1198. Stating that the "general finding under the negligence instruction fail[ed] to identify what the jury found sustained by the evidence," the court "could not say as a matter of law the issue decided by the first jury [was] identical to the issue in controversy in [the present] case." *Id.* at 1198-99.

The same facts are present here. As BSNF notes, the verdict in *Compton* also included a general negligence verdict which "could have been based on any one of the seven (7) separate allegations of negligence." (Doc. 131 at 14). In the absence of a specific finding on negligence in *Compton*, the Court cannot find that the precise issue here—that BNSF did not provide a reasonably safe work place as required by FELA—was determined in *Compton*. The lack of certainty in the record regarding the precise basis of the jury's verdict counsels in favor of denying summary judgment on collateral estoppel grounds. *See Fulsom Const. Co. Inc.*, 2005 WL 2542860, at *3. Thus, plaintiff cannot demonstrate the identity element.

### 2. Privity

Even if the Court were able to determine that the issues in *Compton* and this case were in fact identical, plaintiff cannot establish the privity element. Collateral estoppel only binds parties and their privies. *Dodge*, 203 F.3d at 1198. The Tenth Circuit has recognized that there "is no definition of 'privity' which can be automatically applied" to cases involving the doctrine

7

of collateral estoppel. *Lowell Staats Mining Co. v. Philadelphia Elec. Co.* 878 F.2d 1271, 1274-75 (10th Cir. 1989). "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Id.* at 1275. Examples of relationships where privity has been found to exist include those of a trustee and beneficiary, a seller and buyer, or where there is representation of interests of the same person. *Id.* The issue of whether privity exists is a question of fact. *Id.* at 1276.

Here, plaintiff contends that Compton and he are in privity with one another because they worked in the same craft, in the same yard, over the same time period, and under the same working conditions. (Doc. 127, ¶10). Plaintiff also asserts that the privity relationship is further established by the fact that both Compton and plaintiff are "beneficiaries of the Federal Employers Liability Act." (*Id.*). Plaintiff notes that his counsel also represented Compton. (Doc. 127, ¶ 11). In response, BNSF argues there is no privity because plaintiff and Compton worked different jobs in different parts of the Cherokee Yard and alleged a different set of cumulative injuries over a different timeframe. (Doc. 131 at 15). Specifically, BNSF cites evidence that the plaintiff's work required him to frequently repair cars off-site, whereas Compton spent time on the repair track, the train yard, the oil room, the blacksmith shop, and the weld shop. (Doc. 131 at 16). While plaintiff rarely performed outbound inspections during the latter part of his employment with BNSF, Compton split his time between inbound inspections, outbound inspections, and train yard inspections. (*Id.*). BNSF also states that plaintiff's alleged cumulative injuries are distinct from those of Compton, who alleged injuries to his arms, wrists, and knees. (Doc. 131 at 15-16).

Viewing the evidence in a light most favorable to BNSF, the Court finds that the connection between Compton and plaintiff is tenuous at best and certainly cannot establish

privity. While Compton and plaintiff were coworkers, they have no legally significant relationship that even remotely resembles the relationships that binding precedent suggests demonstrate privity. *See Lowell*, 878 F.2d at 1275. The fact that the Compton and plaintiff retained the same legal counsel does not automatically weigh in favor of privity, despite plaintiff's attempt to suggest as much. (*See* Doc. 127, ¶ 11).

Based on the forgoing analysis, the Court finds that plaintiff cannot demonstrate either identity of issues or privity. Accordingly, the Court **denies** plaintiff's Motion for Partial Summary Judgment (Doc. 127).

### CONCLUSION

For the reasons stated, BNSF's Motion for Sanctions (Doc. 154) and plaintiff's Motion for Partial Summary Judgment (Doc. 127) are **denied**.

SO ORDERED this 1st day of April, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE